# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| V. | § | CASE NO. 4:11-CR-46 |
| | § | Judge Crone/Judge Mazzant |
| JOSHUA STEVEN MITCHELL | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant's Motion to Suppress Evidence and Statements (Dkt. #22). Having considered the relevant pleadings, argument, and testimony given at the June 15, 2011 hearing, the Court is of the opinion that Defendant's motion should be denied.

## BACKGROUND

Defendant seeks to suppress evidence of two firearms, fraudulent identification-making materials, a blasting cap, and other physical evidence obtained from the seizure of Defendant and search of his vehicle. Defendant's motion also seeks suppression of all statements made after the arrest. Defendant argues that this search violated his Fourth Amendment rights against unreasonable search and seizure by the government. In his motion and at a hearing on June 15, 2011, Defendant asserts that this search was not conducted with probable cause and no valid exception to the warrant requirement applies to the arrest and search of Defendant's vehicle. Therefore, Defendant argues, all physical evidence obtained as a result of that search should be suppressed.

The Government argues that the search of Defendant's vehicle was conducted with probable cause based on information received in a police bulletin and corroborated by the officers, as well as evidence recovered from the person of Defendant after a lawful *Terry* frisk. *Terry v. Ohio*, 392 U.S. 1 (1968). Additionally, the Government argues that the search was conducted pursuant to the

voluntary consent of the driver of the vehicle. At the hearing the Government offered the testimony of Sergeant Matthew Cain with the Denton Police Department. The Government offered into evidence the police bulletin reviewed by the Denton police officers, five photographs of evidence confiscated during the search of Defendant's vehicle, one of the firearms recovered during the search, a holster for the firearm recovered during the search, and one DVD recording of the conversation between Sergeant Cain and the driver of the vehicle regarding consent to search the vehicle. Defendant called no witnesses, but offered into evidence two photographs of the interior of the vehicle.

Sergeant Matthew Cain testified that on August 23, 2010, he reviewed a bulletin issued by the Plano Police Department. The bulletin indicated a subject by the name of Ryan Webb, who was in a black Ford F-250 with a license plate of "T-H-E-K-N-G" or "the king," was suspected by law enforcement to be involved in a theft from a hotel and to be impersonating a federal officer. The bulletin further indicated that the suspect was armed. On August 24, 2010, at approximately 12:00 a.m. or shortly thereafter, Sergeant Cain and Officer Simmons observed the described vehicle driving into the parking lot of Sonic, adjacent to Denny's, where the officers were parked. Sergeant Cain testified that the Defendant got out of the truck and approached the officers' vehicle at a brisk pace. Sergeant Cain identified the truck from the bulletin issued by the Plano Police Department, and alerted Officer Simmons. Sergeant Cain feared an ambush from Defendant and suspected he was armed. Both officers drew their weapons and exited their vehicle. Sergeant Cain approached the driver's side of the parked truck and asked the driver to get out of the vehicle. He performed a frisk for weapons, and identified the driver as Ms. Rachel Sheridan. At the same time, Officer Simmons approached Defendant and ordered him to put his hands in the air and get on the ground. Defendant

complied with Officer Simmons' verbal requests.

Sergeant Cain further testified that he performed a frisk for weapons on Defendant. During the frisk, Sergeant Cain found a spring-loaded pocket knife, a handcuff key, and a badge for the organization "International Intelligence Agency." Additionally, Defendant was dressed in what was described as all black combat gear of a type that was abnormal for civilian attire. Defendant informed the officers that his name was Ryan Webb, and that he had no state issued identification documents. However, when backup officers arrived on the scene an additional frisk for weapons was performed on Defendant. At that time, an Arizona state driver's license in the name of Ryan Webb fell out of the top of Defendant's boot.

Sergeant Cain testified that the driver's license looked suspicious because it had no holograph and the license picture and text quality was unclear or "fuzzy." Officers at the scene scanned the magnetic strip, which indicated the license belonged to Ryan Webb. However, officers also ran the bar code listed on the license, which was identified as registered to a female. In addition, Officer Cain observed the butt of a pistol sticking out from under the front of the passenger side seat in plain view.

After observing the pistol butt inside the vehicle, Sergeant Cain approached Ms. Sheridan to ask if there were firearms in the vehicle. He testified that he was concerned for the safety of the two children sleeping in the backseat, as well as for Ms. Sheridan. Sergeant Cain warned Ms. Sheridan that the actions she took that evening would have a lasting impact on her life, and asked if anything illegal would be discovered in the vehicle. At that time, Ms. Sheridan told Sergeant Cain that he could search the truck. Inside the vehicle, Sergeant Cain found two firearms, a holster, an assortment of ammunition for the weapons, a blasting cap used to detonate explosives, and hardware

3

used to scan or embed magnetic strips commonly used in the development of fraudulent identification cards. In addition, Sergeant Cain found several identification cards that a federal officer might possess, each bearing the name of "International Intelligence Agency." Defendant was taken to the police station, and further investigation by law enforcement identified him as Joshua Mitchell.

## ANALYSIS

Defendant argues that his arrest and the subsequent search of his vehicle were unconstitutional and therefore any and all evidence seized in connection with the arrest should be suppressed. Defendant argues that law enforcement did not have probable cause to detain Defendant and to subsequently search his vehicle. Defendant asserts that by ordering him to the ground and placing him in handcuffs, law enforcement officers conducted an illegal de facto arrest. According to Defendant, he was not free to leave and could not access the vehicle. Therefore, this arrest and search violated his Fourth Amendment rights, and all evidence seized after this arrest should be suppressed as "fruit of the poisonous tree." Finally, Defendant alleges that any consent to search the vehicle given by Ms. Rachel Sheridan, the driver of the vehicle, was made under duress.

The Government argues that the arrest of Defendant and the subsequent search of his vehicle were proper because at the time of the arrest and search of Defendant's vehicle, law enforcement officers had probable cause to believe that the vehicle contained evidence of the offense. The Government argues that Defendant was not placed under arrest, but rather a lawful detention by law enforcement officers while they conducted their investigation. The Government contends that the search of the vehicle was a lawful search incident to the arrest of Defendant. In addition, the Government argues that consent to search the vehicle was voluntarily given by Ms. Sheridan, who

4

had control of the vehicle at the time consent was given.

*Statements Made By Defendant*

Although Defendant's written motion argues that statements made by the Defendant at the time of the arrest should be suppressed, no argument was made at the hearing on June 15, 2011, regarding the Defendant's statements.

*Evidence Obtained from Defendant's Vehicle*

Defendant argues that his arrest and the subsequent search of his vehicle violated his Constitutional rights under the Fourth Amendment, because law enforcement made the arrest and search without a warrant and without probable cause. The Fourth Amendment ensures that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The warrantless search of an area in which the Defendant has a privacy interest is per se unreasonable, unless the Government can show that an exception applies. *Katz v. United States*, 389 U.S. 347, 357 (1967). Fourth Amendment jurisprudence recognizes several warrant exceptions. The Supreme Court held that an officer may perform a warrantless search of a home incident to arrest, so long as the search is limited to the area within the arrestee's "immediate control," which means "the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763 (1969). The Supreme Court applied the holding in *Chimel* to occupants of automobiles in *New York v. Belton*, 453 U.S. 454 (1981). The Court held that an officer who arrests "the occupant of an automobile...may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile" and any containers found inside. *Id.* at 460.

In support of his motion to suppress evidence, Defendant relies upon the recent Supreme

Court decision of *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710 (2009). In *Gant*, officers arrested a driver for a suspended license, handcuffed him, and placed him in the back of a police car. Officers searched the interior of the car that the arrestee had exited, uncovering a gun and a bag of cocaine. *Id*. at 1714-16. In holding that this search violated the Fourth Amendment, the Supreme Court rejected a broad interpretation of *Belton* that would permit a search of the entire passenger compartment of a vehicle with no regard to whether the interior compartment was actually accessible to the arrestee at the time of the search. *Id*. at 1719. Instead, the warrant exception described in *Chimel* only applies to an officer "search[ing] a vehicle incident to a recent occupant's arrest...when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id*. The Court noted that under this rule, "it will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee's vehicle remains." *Id*. at 1719 n. 4 (citation omitted).

Defendant argues that, under *Gant*, the search incident to arrest exception did not validate a warrantless search during and after his arrest. Defendant bases this argument on the fact that, during the search of his vehicle, he was already under arrest and had no access to his vehicle or its contents. According to the testimony provided at the motion hearing, Defendant was handcuffed, placed on the curb approximately ten (10) or fifteen (15) feet behind the vehicle, under the supervision of law enforcement, and several officers were on the scene when the search of his vehicle took place. Following the reasoning in *Gant*, a reasonable officer could not consider Defendant capable of accessing his vehicle at the time the search was conducted, which would not validate a warrantless search.

The Government argues, and the Court agrees, that while *Gant* limits the search incident to

arrest exception, *Gant* also affirmed the viability of the probable cause exception for automobiles. *Id*. at 1719. When searching a vehicle without a warrant, "a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained." *United States v. Ross*, 456 U.S. 798, 809 (1982). "An individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." *Id*. at 823. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id*. at 825. In *Gant*, the Supreme Court notes that "*Ross* allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader." *Gant*, 129 S.Ct. at 1721. Therefore, if the law enforcement officers had probable cause, then Defendant's motion to suppress should be denied.

Probable cause is defined as "whether at that moment the arrest was made, the officers had...facts and circumstances within their knowledge and of which they had reasonably trustworthy information that was sufficient to warrant a prudent man in believing that [Defendant] had committed or was committing an offense." *Charles v. Smith*, 894 F.2d 718, 723 (5th Cir. 1990) (quoting *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964)). "The existence of probable cause is determined by reviewing the totality of the circumstances." *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The Court finds that the law enforcement officers had probable cause to arrest Defendant and search Defendant's vehicle. Here, the officers received a police bulletin which contained a description and picture of the black F-250 and the license plate, identified the Defendant by the name Ryan Webb, alerted officers to Defendant's suspected activity as impersonating a federal officer, and

indicated that Defendant may be armed. Upon Defendant's approach of the police vehicle, Sergeant Cain and the other officers corroborated all of this information. Defendant gave the name Ryan Webb to officers who asked for identification. The truck and license plate matched the description given in the bulletin. Further, Defendant was dressed as a federal officer might dress, and carried a handcuff key and a badge on his person. Finally, officers observed a firearm in plain view inside the vehicle on the passenger side where Defendant was seated before exiting the vehicle. Defendant also carried fraudulent identification cards on his person. A review of the totality of the circumstances, including the collective knowledge and experience of the officers involved, indicates that the officers had probable cause, that is they had reasonably trustworthy information that was sufficient for a prudent person to believe that Defendant committed or was committing an offense.

"Voluntary consent to a search is an exception to the general prohibition on warrantless searches." *United States v. Jacobs*, 125 Fed. App'x 518, 523 (5th Cir. 2005) (*citing United States v. Jenkins*, 46 F.3d 447, 454 (5th Cir. 1995). The Court considers six factors in determining the voluntariness of consent, which are:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*Id*. (citing *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir.1997)). The voluntariness of the consent given is determined by a totality of the circumstances, and no one factor is dispositive. *Id*.

The Court finds that Ms. Sheridan gave voluntary consent to search Defendant's vehicle. Ms. Sheridan had dominion and control over the vehicle. She was not in custody of the officers, and at no time did the law enforcement officers ask her to allow them to search the vehicle. The video

8

conversation depicted Ms. Sheridan speaking with officers, and she did not appear nervous speaking with the officers. The Court finds Ms. Sheridan was not under duress at the time she consented to the search.

## RECOMMENDATION

The Court recommends that Defendant's Motion to Suppress should be DENIED.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 18th day of July, 2011.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE